Opinion by
 

 Cunningham, J.,
 

 More than five years after the referee and board had disallowed the claim of Miller Leeper, appellant herein, for compensation for an alleged accidental injury to his' left eye, received through the exploding of a hot bloom during the course of his employment with Logan Iron & Steel Company, he endeavored to revive the proceeding by filing with the board on October 13, 1935, a petition which became the basis of the proceedings with which we are now concerned. Over the objection of
 
 *174
 
 counsel for the employer and its insurance carrier, the successor to the referee to whom the original claim had been referred, took jurisdiction of the petition but refused compensation upon the merits. Leeper then appealed to the board, which tribunal reversed the referee upon the merits but dismissed the proceeding upon the ground that the filing of the petition was not authorized by any provision of the Workmen’s Compensation Act of June 2,1915, P. L. 736, or its amendments, and the board was, therefore, without jurisdiction to entertain it. The employee’s appeal to the court below from the decision of the board was dismissed on April 9, 1937, and judgment, in effect, entered in favor of the employer and its carrier. The present appeal, which we permitted to be presented in forma pauperis, is by the employee from that judgment.
 

 We are convinced by our examination of the record that the judgment was properly entered and should be affirmed upon the principal ground stated by Uttlbt, P. J., in his clear and forceful supporting opinion — lack of jurisdiction in the compensation authorities to entertain the petition or review the original disallowance of appellant’s claim.
 

 The original claim-petition was filed March 19, 1929, and in it appellant averred that while employed as a “rougher” in one of the mills of the defendant company, on March 21, 1928, he suffered burns upon his face and in his left eye from molten metal accidentally thrown upon him. The allegation with respect to appellant’s injuries read: “Burning of the left eye by flames and exploding material thrown off from the rolls causing almost total loss of vision of the left eye and the right eye is sympathetically affected.” It was conceded that appellant had not lost any time or experienced any diminution in earning power by reason of his injuries up to that time, and, as we read the record, he has been
 
 *175
 
 continuously employed at the same work throughout these proceedings.
 

 When this petition was referred to the referee, any one of three dispositions of it was possible, depending upon the proofs. If the evidence had shown the industrial loss of the use of the eye, appellant would have been entitled, under section 306(c) of the statute, as amended April 13, 1927, P. L. 186, 77 PS §513, to an award of “sixty-fire per centum of wages during one hundred and twenty-fire weeks” for that permanent injury, and “without considering, but including, all incapacity, whether such incapacity were total, partial or no incapacity at all”:
 
 Lente v. Luci,
 
 275 Pa. 217, 119 A. 132. Or if the eridence had shovrn the use of the eye had not been lost, but appellant’s injuries had caused a loss of earning power upon the open labor market, he would hare been entitled to an award for partial disability under section 306(b), 77 PS §512. In the third place, if appellant failed to prore either the permanent loss of the use of the eye or partial loss of earning power, it would be the clear duty of the referee to disallow his claim.
 

 It is not necessary, for present purposes, to reriew the eridence submitted to the referee in support of the original claim-petition. It is sufficient to say that, after fire hearings, at which appellant and eight witnesses called by him including three eye specialists and an impartial expert selected by the referee were heard, the claim was disallowed upon the ground “that the claimant had failed to meet the burden of proof placed upon him to establish [either partial] disability or loss of the use of his left eye for industrial purposes.”
 

 Prom this disallowance by the referee, appellant .appealed to the board. In an opinion, dated August 16, 1930, the board affirmed the findings of fact and conclusions of law of the referee and dismissed the appeal. If any injustice was done by this decision of the board,
 
 *176
 
 the statute provided appellant with a choice of either of two remedies. He could have appealed within ten (later extended to twenty) days after notice of the dis-allowance to the Court of Common Pleas of Mifflin County, under the provisions of Section 427 of the statute, as amended June 26, 1919, P. L. 642, 77 PS §§872, 873; or, under the provisions of Section 426, as further amended by the Act of April 13, 1927, P. L. 186, 77 PS §871, he could have petitioned the board, within one year, for a rehearing of the original petition upon which it had sustained the action of the referee in disallowing his claim. He did neither.
 

 By reason of appellant’s inaction during the year following the disallowance of his claim the adjudication thereof by the compensation authorities became final and conclusive and the matters which were, or could have been, litigated thereunder became res judicata, unless the legislature has provided some means of reviewing the
 
 disallowance
 
 of a claim other than by a rehearing under Section 426. Whether or not it has done so is the controlling question of law involved upon this appeal.
 

 After permitting matters to rest for more than four years after the action of the board became final, counsel for appellant seem to have conceived the idea that if it could be shown that the condition of their client’s eye had gradually deteriorated to the point where it could be found he had permanently lost its use for industrial purposes, a reconsideration and reversal of the disallowance of August 16, 1930, might be obtained under the second paragraph of Section 413, 77 PS §772, which, among other things and under certain conditions therein prescribed, provides relief for injured employees whose disability has increased or recurred. This view of the law led to the filing on October 13, 1935, (more than 300 but less than 500 weeks after the accident) of the petition involved in the subsequent proceedings. It
 
 *177
 
 was entitled “Claimant’s petition for reinstatement and award of compensation for the loss of use of left eye for industrial purposes.” In general, the petition recites the history of the injury, the proceedings before the referee and board in 1929-30, and the disallowance of the claim. In paragraph thirteen, it is averred, inter alia, that appellant had been furnished under date, of November 3,1934, with an opinion by Dr. Paul N. Allis, who had testified for appellant at one of the hearings upon the original claim, that appellant’s right eye was, on the date of the opinion, normal, and that Dr. Allis was “of the opinion that the cataract which is now present in the left eye causing visual loss could have developed as the result of the injury which Mr. Deeper suffered in 1928.”
 

 Under the fourteenth paragraph, it is alleged that appellant “has lost the use of his left eye for industrial purposes and is totally blind [therein] because of the accident.” The prayer was that the board “make an order and decree
 
 reinstating
 
 [appellant’s]
 
 compensation
 
 and ordering and directing the defendant or its insurance carrier, ...... to pay to [appellant] the compensation fully due him by reason of the happening of said accident.” (Italics supplied)
 

 The theory upon which the petition was filed seems to be that the board had power and jurisdiction, under Section 413, to reconsider, at any time within 500 weeks following the accident, the disallowance made by the former board on August 16, 1930, and make an award of compensation, based upon such condition of appellant’s eye as might be shown at a hearing before a referee or the board. The employer and its insurance carrier filed an answer challenging the jurisdiction of the compensation authorities to entertain the petition. When the matter came on for hearing before a referee, counsel for appellees objected to the taking of any testimony under the petition because the merits of appel
 
 *178
 
 lant’s claim had been adjudicated in 1930 and the only method prescribed by the statute by which the board may reconsider a
 
 disallowance
 
 of compensation is by a petition for a rehearing, filed under section 426 within one year after the disallowance has been made. This objection was overruled and the referee proceeded to a hearing. We think, for the reasons hereinafter stated, the objection should have been sustained and the proceeding ended at that point.
 

 After taking more than 130 pages of testimony and weighing the conflicting opinions of the eye specialists' called by the respective parties, the referee adopted the opinion of appellant’s witnesses that the cataract resulted from the injury; but refused an award because the testimony showed the eye could “be restored by surgical removal of the cataractous Jens.”
 

 Both parties appealed to the board from the action of the referee; the board, after fully stating their reasons in a comprehensive opinion, set aside the findings of the referee and substituted their own. In substance, the board agreed with the referee relative to the cataract having resulted from the accident, but disagreed with his finding that the eye could be restored by an operation and held the proposed operation would be so delicate, dangerous and problematical as to results, that an award of compensation should not be refused if they had any jurisdiction under the petition. Upon that question, the board, in its third conclusion of law, held, in effect, that the only method for reviewing a disallowance was upon a petition to the board for a rehearing, filed within one year after it had disallowed a claim. Beeper’s appeal was accordingly dismissed for lack of jurisdiction.
 

 It is clear from the exceptions taken by appellant in support of his appeal from the action of the board to the court below that the petition was drafted and
 
 *179
 
 filed under the second paragraph of Section 413. Among the exceptions is' an averment that the board erred in making its definitive order: “(a) Because the said order is based on an erroneous conclusion of law; (b) because eye injuries are expressly excepted by the amendment of 1927 from the limitation of one year; and (c) because where loss of sight eventually results a petition may be filed within a period of five hundred (500) weeks.” There is also evidence, to which we shall refer later, in the petition that its draftsman was endeavoring to bring the case within the provisions of the second paragraph of Section 413, which reads:
 

 “The
 
 board,
 
 or referee designated by the board, may,
 
 at any time,
 
 modify,
 
 reinstate,
 
 suspend, or terminate
 
 an original or supplemental agreement or an award,
 
 upon petition filed by either party with such boaid, upon proof that the
 
 disability
 
 of an injured employe has
 
 increased,
 
 decreased,
 
 recurred,
 
 or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification,
 
 reinstatement,
 
 suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided, That,
 
 except in the case of eye injuries,
 
 an
 
 agreement
 
 or an
 
 award
 
 can only be reviewed, modified, or
 
 reinstated
 
 during the time such
 
 agreement
 
 or
 
 award
 
 has to run, if for a definite period; and,
 
 except in the case of eye injuries,
 
 no
 
 agreement
 
 or
 
 award
 
 shall be reviewed, or modified, or
 
 reinstated,
 
 unless a petition is filed with the board within one year after the date of the last payment of compensation, with or without an agreement.” (Italics supplied)
 

 It has been repeatedly held that this paragraph of the statute applies both to formal agreements, original
 
 *180
 
 or supplemental, for the payment of compensation, when approved by the board, and to awards of compensation made by referees and affirmed by the board or made by the board itself; and that it applies whether the agreement or award be in existence or has been suspended or terminated. Its primary function is to provide for changes which may have occurred in the physical condition of an injured employee after a prior agreement or award had been made, suspended, or terminated, if such changes develop within the specified time limitations:
 
 Zupicick v. P. & R. C. & I. Co.,
 
 108 Pa. Superior Ct. 165, 164 A. 731.
 

 In a case involving eye injuries and where no payments of compensation are being made at the time the petition is filed, the paragraph provides for the
 
 reinstatement
 
 “at any time,” within the general limitations of the statute as a whole, of any former agreementy executed by the parties and approved by the board, or any prior
 
 award,
 
 upon proof that “the disability of [the] injured employee has increased ...... or recurred.”
 

 For instance, in the Zupicick case the accident occurred in January, 1921, and the parties executed an agreement for payment of compensation for total disability under which payments were made until May, 1925, when the agreement was terminated by a final receipt. Eye injuries developed in 1922 as one of the results of the accident. On December 18, 1930, 518 weeks after the date of the agreement, the employee filed his petition under the second paragraph of Seetoin 413 for an award for the loss of the industrial use of his right eye. It was held, inter alia, that the above quoted specific time limitations with which the paragraph concludes did not apply because “eye injuries” were involved, but that the phrase “at any time,” in the second line of the paragraph, means at any time during the contemplated period an agreement or award has to run, viz., 500 weeks for total disability and 300 weeks for
 
 *181
 
 partial, and that Zupicick’s petition had been filed too late.
 

 In the case at bar, appellant’s difficulty does not arise primarily out of the date upon which he sought relief under Section 413; his fundamental and insurmountable difficulty is that there never was any
 
 agreement
 
 or
 
 award
 
 which could be
 
 reinstated.
 
 It is idle to petition and argue for the
 
 reinstatement
 
 of something that never existed. What appellant got as a result of his efforts to obtain compensation in 1929-30 was an unappealed from
 
 disallowance
 
 of his claim. Section 413 deals with agreements and awards — not with disallowances. For the legislature to have authorized the board to “modify, reinstate, suspend, or terminate” a
 
 dis-allowance
 
 would have been a palpable absurdity. The omission of disallowances from Section 413 was not an oversight. A review by the board of the merits of a disalloAvance is, as above stated, specifically provided for in Section 426. The method prescribed is the filing of a petition for a rehearing within one year after the dis-allowance.
 

 The petition itself contains inherent evidence that counsel for appellant realized, and tried to circumvent the difficulties confronting them; its title represents that it is a petition “for
 
 reinstatement
 
 and
 
 award
 
 of compensation” and its prayer is that the board “make an order and decree
 
 reinstating
 
 [appellant’s] compensation,” although, they well knew, there had never been any “compensation” to be reinstated.
 

 In the tenth paragraph of the petition it is asserted that the disallowance of 1930 was “based upon the mutual agreement between the claimant and the defendant ......to the effect that at the time of the hearing ......the claimant had not yet lost the use of his left eye for industrial purposes.” Again, in the twelfth paragraph it is alleged that the board, upon appellant’s appeal from the disallowgn.ee of the referee, “affirmed
 
 *182
 
 the action of the referee in
 
 suspending
 
 any
 
 payments
 
 of
 
 compensation.”
 
 (Italics supplied)
 

 As is clearly pointed out in the opinion of the board dismissing the petition for want of jurisdiction, there is not the slightest justification in this record for making these, to say the least, disingenuous averments. The action of the referee and board in 1930 was a clear-cut and unqualified disallowance of the claim. Any attempt to distort it into anything else is unjustifiable.
 

 None of the cases cited by counsel for appellant has any application to the situation presented by this appeal. In
 
 Ancello v. Elk Tanning Co.,
 
 88 Pa. Superior Ct. 353, cited repeatedly throughout the argument, an agreement for compensation had been executed by the parties and approved by the board, a fact which brought that case, involving an eye injury, clearly under paragraph two of Section 413. Also in
 
 McGee v. Y. & O. Coal Co.,
 
 121 Pa. Superior Ct. 85, 182 A. 773, an agreement had been entered into and terminated by a final receipt. The argument based on
 
 Manley v. Lycoming Motors Corp.,
 
 83 Pa. Superior Ct. 173, entirely ignores the fact that the case cited was decided three years prior to the amendment of April 13, 1927, P. L. 186, to Section 426, which introduced into that section the limitation that a rehearing “shall not be granted more than one year after the board has made” a disallowance, etc. Such citations merely muddy the water and obscure the real issue.
 

 Another matter requiring consideration is the suggestion that the petition might be considered as a petition for a rehearing under Section 426 (77 PS §871), and that the exemption of cases of eye injuries from the specific limitations of Section 413 should be applied in construing the limitation of one year contained in Section 426.
 

 The material provisions of Section 426 read: “The board, upon petition of any party and upon cause shown,
 
 *183
 
 ...... may grant a rehearing of any petition upon which the hoard has made an award or disallowance of compensation or other order or ruling, or has sus tained or reversed any'action of a referee, but such rehearing shall not be granted more than one year after the board has made such award, disallowance, or other order or ruling, or has sustained or reversed any action of the referee.......Provided, however, That nothing contained in this section shall limit or restrict the right of the board, or a referee designated by the board, to review, modify, set aside, reinstate, suspend, or terminate, an original or supplemental agreement, or an aAvard in accordance with the provisions of section four hundred thirteen of this article.”
 

 We think the purpose of the above quoted proviso is to show that Sections 413 and 426 are mutually exclusive. The provisions of Section 413 are applicable only where an agreement or award is still in existence, or has been suspended or terminated, but which, if in existence, should be modified, suspended, or terminated, or, if not in existence, should be reinstated, by reason, in either case, of a temporary or permanent change in the physical condition of an injured employee. Action may be had under that section, subject only to the limitations prescribed therein. On the other hand, the provisions of Section 426 do not apply at all to
 
 agreements
 
 for compensation, but do expressly apply to
 
 disallowances
 
 as well as awards. That section provides an alternative remedy for an erroneous disallowance — an appeal to the common pleas being the other remedy— but it makes no distinction between eye injuries and other injuries. The grounds upon which the board may exercise its jurisdiction under Section 426, at any time within one year after its previous action, are not limited to changes in the physical condition of the employee, or in the status of a dependent, but a rehearing may be granted upon
 
 any cause
 
 shown to the satisfaction of the
 
 *184
 
 board. An employee entitled to relief under Section 413 may obtain the same, although much more than one year may have elapsed from the date of an agreement or an award, and the evident purpose of the proviso was to prevent any attempt to apply the limitation of one year within which a rehearing must be granted under Section 426 to cases falling under Section 413.
 

 Dolan v. Com. of Pa.,
 
 106 Pa. Superior Ct. 74, 161 A. 763, is a case in which a referee entered a disallowance of a claim and the board on appeal affirmed the action of the referee. Approximately three years thereafter claimant presented his petition for a rehearing. The board dismissed the petition, the common pleas reversed the board, and this court reversed that tribunal and sustained the action of the board. See also
 
 McGuire v. Dougherty & Jennings et al.,
 
 119 Pa. Superior Ct. 485, 180 A. 168, and cases there cited.
 

 The final argument in behalf of appellant and in support of his second assignment of error does not merit extended consideration. It is that an employee (claiming to have suffered an accidental eye injury) who files his claim-petition within one year after the accident, prosecutes it to a judgment of disallowance by the board, but neither appeals to the common pleas from the action of the board nor applies to the board for a rehearing within one year after the adjudication of his claim, is entitled, upon showing an increase in the extent of his loss of vision, to have his
 
 claim-petition reinstated,
 
 under Section 413, at any time within 500 weeks following the accident. No basis can be found in the statute for such a proposition. Section 413 does not provide for the reinstatement of anything other than an agreement or an award. Even the combined ingehuity of appellant’s ’experienced counsel cannot transform a mere claim-petition, which has been finally disallowed, into an agreement or an award.
 

 Evidently, appellant, who was represented, by coum
 
 *185
 
 sel other than those now upon the record, did not feel aggrieved by the disallowance of his claim in 1930 and, therefore, took no steps to have the decision reconsidered or reversed. If subsequent developments have caused him to regret his failure to avail himself of either of the remedies provided by the legislature, the responsibility rests with him. We must construe and apply the law as we find it.
 

 Judgment affirmed.